(Cuyahoga County Court of Common Pleas.)
February Term, 1898.

SEYMOUR F. ADAMS et al. v. JOSEPH C. SHIELDS, as Treasurer of Cuyahoga County.

Where an incorporated company, having used part of its earnings for extensions and improvements which add to the value of its property, issues to its shareholders scrip certificates in proportion to the amount of stock held by them, which provide:

"This is to certify that—----will be entitled, upon the surrender of this certificate, to—shares of ten dollars each, of the capital stock of this company, whenever and so soon as such capital stock shall be increased $151,200 or more, above the present amount thereof; and until such increase is made and this certificate surrendered for conversion, dividends from the earnings of the company or from the proceeds of the sale of its property, whether paid in money or in scrip, shall be paid to the owner of this certificate appearing as such upon the books of the company, pro rata with, and the same as to the owners of the shares of the capital stock, provided, however, that if at the time of the increase of the capital stock, there shall exist any legal disability which will prevent the conversion of this certificate into stock, there shall be paid to the owner thereof, upon demand, and its surrender, the par value in money, of the share as herein provided for." Held, that such scrip certificates are not property in the hands of or under the control of the stockholders, within the meaning of our statutes, and are not taxable in their hands.

ONG, J.

The case of Seymour F. Adams et al., against Joseph C. Shields, treasurer, is before the court on application of the plaintiff to have made perpetual an injunction heretofore granted by this court, restraining the defendant, Joseph C. Shields, county treasurer, and his successors in office, from placing upon the county duplicate and collecting from the estate of plaintiff's decedent, M. C. Younglove, the sum of $51,940.67.

It is charged in the petition, among other things, that the decedent, M. C. Younglove, did not make a false return of his property, monies, credits, or investments in either of the years referred to in the petition, to-wit: from the year 1887 to the year 1892; nor did he in either of said years evade making return of the same, for the purpose of taxation.

The plaintiff further says in his petition, that the facts requisite to give the auditor power to place or enter any sum on the tax list in his office against plaintiff's decedent,

or his estate in pursuance of sec. 2781, Rev. Stats. of Ohio, for the years named, had no existence as the pre requisite of a false return by the decedent, M. C. Younglove, or of evading a return, but that the acts of said auditor in so entering said sums for taxation and of certifying the same to the defendant, were entirely unauthorized and void.

And after the averment of several facts, the plaintiff prays that the treasurer may be enjoined from collecting or attempting to collect the sums or any portion thereof so placed upon the tax duplicate and named in the certificate of the auditor; that a temporary order may be granted; and that upon final hearing, the injunction may be made perpetual, and for such other and further relief as equity may require.

In this connection I should say that some time after the filing of the petition just referred to, the plaintiff filed an amendment to the petition, and brought upon the record the facts substantially set forth in the cross-petition of the defendant, to-wit: the issuing and existence and non-taxability of the scrip certificates.

This is substantially the claim of the plaintiffs as set forth in their petition and in the amendment to their petition.

In short, they charge that the auditor of Cuyahoga county, without any authority or any right, has called upon the estate of their decedent to pay into the county treasury the sum of $51,940.67, as taxes upon property that the auditor claims their decedent omitted to return for taxation for the five years preceding and including the year 1892.

To this petition the defendant's successor in office, to-wit: R. S. Hubbard, treasurer of Cuyahoga county, files an amended answer and cross-petition, in which he denies all the allegations contained in the petition of the plaintiffs, except those that are expressly admitted; and then, for a second defense to the action of the plaintiffs, he says that the plaintiffs' decedent, Moses C. Younglove, omitted in the years 1887, 1888, 1889, 1890, 1891, and 1892, to list for taxation all of his personal property, moneys, credit, investments in bonds, stocks, in joint stock companies or otherwise, but instead of so doing, he neglected and evaded making a return of said property, and made a false return of the same, and that the assessor did not return for him a true and correct list of the same; and then avers the death of Moses C. Younglove, the appointment and qualification of his executors; and then charges that the auditor of Cuyahoga county, in pursuance of the statute in such cases made and provided, gave to the plaintiffs notice as such executors to appear before the auditor and show cause why the tax return of Moses C. Younglove should not be corrected and the omission of property therefrom be placed on the duplicate for collection; that in pursuance of said notice the executors appeared and a hearing was had, and as a result of such hearing,

the auditor found that the decedent was the owner of investments held by him in the scrip certificates of indebtedness or evidence of indebtedness, issued by The Cleveland Gas Light and Coke Company, an incorporated Company, as follows:

In the year 1887, 11223 parts of the value of $112,230.00.

In the year 1888, 19021 parts of the value of $190,210.00.

In the year 1889, 19026 parts of the value of $190,260.00.

In the year 1890, 22147 parts of the value of $221,470.00.

In the year 1891, 25580 parts of the value of $225,800.00.

In the year 1892, 25580 parts of the value of $245,800.00.

The auditor further alleges, that the certificates were held by the decedent, Younglove, as an investment, for the sake of investment, and that no right of off-set or deduction for debts existed; but that the same were taxable as investments in bonds.

And the defendant avers that that finding has not been reversed, vacated or modified, but is in full force; that the certificates were worth the par value thereof, and were chargeable with taxes at the par value increased by the penalty of fifty per centum, because the returns of the decedent, M. C. Younglove, were false and evasive, and that the finding of the county auditor has never been appealed from, modified, reversed, or set aside, but remains in full force and effect in law, and that the taxes set out in the plaintiffs' petition are the same taxes that are charged upon said investments in said certificates and no other, and that the same were placed by the county auditor upon the tax list in his office for each of the years respectively, and also upon the duplicate in the office of the county auditor and in the office of the county treasurer, as required by law.

He therefore asks that the petition of the plaintiffs and the restraining order be dismissed; and then, for his cross-petition, he sets forth the same facts, except he makes the right to recover from the estate of plaintiffs' decedent each year a separate and independent cause of action; and prays judgment against the plaintiffs as such executors in the sum of $59,731.77, together with costs.

To this answer and cross-petition the plaintiffs file a reply and deny all the allegations contained in the answer and cross-petition of the defendant, except such facts as are alleged in the second defense of the amended answer, with reference to the expiration of the term of office of Joseph C. Shields, and the fact that he was succeeded by R. S. Hubbard; and that they admit that for six years next, prior to April, 1892, Moses C. Younglove was a resident of the city of Cleveland. In fact, they admit such facts only as are consistent with the allegations made in their petition and amendment to their petition. Such

are the issues presented by the pleadings in this case.

We think that for a clear understanding of the issues to be determined, it is necessary, in passing upon the questions involved, that a brief statement of the agreed facts, together with a brief history of the organization of the corporation known as "The Cleveland Gas Light and Coke Company", should be made.

On February 6, 1846, or about that time, the Cleveland Gas Light and Coke Company was incorporated as an Ohio corporation under an act passed on February 6, 1846, with a capital stock of $40,000.00, divided into shares of ten dollars each.

On March 17, 1849, the act was so amended as to allow an increase of the capital stock, of $25,000.00, to a grand total of $65,000.00.

The same act was further amended on March 1, 1850, so as that the capital stock was finally increased December 29, 1871, to $756,000.00; this increase, however, occurring at different intervals.

No steps were taken or authority given from December 29, 1871, to further increase the capital stock of the incorporation, until February 14, 1893, when authority was given to increase the capital stock to three million dollars, divided into shares of one hundred dollars each, so as the organization of the company and the increase of its capital stock up until December 29, 1871, was had under the old constitution of the state of Ohio, and the act to which I have referred; during which time the company was so managed, so as that its earnings on the 17th day of June, 1873, was $151,200.00; and on June 17th, 1873, at the regular meeting of the board of directors of said corporation, a resolution was adopted in the words and figures following:

"Whereas the earnings and profits of this company, amounting to more than $151,200.00, have from time to time been invested in the extension of the company's works and provided additional facilities for production and distribution made necessary for the increased demand for gas; and in that manner a large addition has been made to the value of the property of the company by withholding from the stockholders monies which have been fairly earned, and, but for the above mentioned expenditures, would have been paid to them, and

"Whereas, upon a fair and just estimate of the property of the company, it has been in this manner increased in value over the amount of the present capital stock, by at least the said sum of $151,200.00, and

"Whereas, the stockholders desire to realize without impairing the property of the company of the profits which have been thus invested, and to make them more valuable, now, therefore, it is

"Resolved that a dividend from the profits of the company, thus invested, of two dollars for each share of the present capital stock of the company, to be paid pro rata to the holders thereof, in scrip after the form following, which scrip shall entitle the re-

spective holders thereof to all the privileges and advantages declared and *expressed therein.*"

The form of the certificate, under the above resolution, is as follows:

"The Cleveland Gas Light and Coke Co.
             "June 17, A. D., 1873.
Number of scrip————
Number of share————

"This is to certify that————————will be entitled, upon the surrender of this certificate, to————shares of ten dollars each, of the capital stock of this company, whenever and so soon as such capital stock shall be increased $151,200 or more, above the present amount thereof; and until such increase is made and this certificate surrendered for conversion, dividends from the earnings of the company or from the proceeds of the sale of its property, whether paid in money or in scrip, shall be paid to the owner of this certificate appearing as such upon the books of the company, *pro rata* with, and the same as to the owners of the shares of the capital stock, provided, however, that if at the time of the increase of the capital stock, there shall exist any legal disability which will prevent the conversion of this certificate into stock, there shall be paid to the owner thereof upon demand, and its surrender, the par value in money, of the share as herein provided for.

"This certificate is transferable only at the office and upon the books of the company.

"Witness:—————.''

At the left hand side of this, is the corporate seal of the company. And attached to it are the signatures of the president and secretary of The Cleveland Gas Light and Coke Company. And this instrument has a blank date, as: The————day of————, 189—.

On the back of the above instrument is printed the legal form for transferring the same.

Under said resolution the corporation made and delivered to its stock-holders *pro rata*, nine issues of scrip certificates at the following dates and amounts:

Scrip 1, June 17, 1873, two dollars per share, on 75,600 shares of capital stock; total, $151,200.00.

Scrip 2, January 22, 1874, one dollar per share, on 75,660 shares of capital stock,—a former issue of scrip,—total, $90,720.00:

Scrip 3, January 28, 1875, one dollar per share, on the same number of shares as above indicated and the former issue of scrip, total, $99,792.00.

And so on through to scrip 9 which was issued on January 20, 1891, of ten per cent. on the 75,600 shares of stock and on former issue of scrip.—a total of $212,990.00.

Which earnings were, from time to time, put by the company into main extension and additional works.

The plaintiffs' decedent, Moses C. Younglove, was the owner of original stock in all the foregoing years, to the amount of 12,

185 shares, and received of the respective issue for scrip certificates, his proper proportion, and retained the same until the increase of capital stock on February 14, 1893.

For the issue of the scrip designated and numbered 2 to 9, a similar resolution to that which I have read, was passed, authorizing the issuing of such scrip.

On July 16, 1873, three per cent. on the capital stock of the company was paid to the stock-holders.

On January 22, 1874, a three per cent. dividend again was declared on the stock; and on the same day and date, three per cent. on the scrip stock, amounting to $756,000,00, and scrip to $151,200,00; and dividends were so declared ranging as shown by the agreed statement of facts, from March, 1874, until February, 1892.

It is further agreed, that the plaintiffs' decedent, Moses C. Younglove, on the day before the second Monday of April, in each of the years, to-wit': From the year 1887 to and including the year 1892, was the owner and holder of scrip certificates of The Cleveland Gas Light and Coke Company, of the various issues thereof, as follows:

For the year 1887, he owned 11223 parts represented by scrip certificates of the par value of $112,230.00.

In the year 1888, he owned 19021 parts of the par value of $190,210.00.

In the year 1889, he owned 19026 parts of the par value of $190,260.00.

In the year 1890, he owned 22147 parts of the par value of $221,470.00.

In the year 1891, he owned 25580 parts of the par value of $255,800.00.

And it is further agreed, that the said Younglove in his lifetime, did not make to the assessor or the county officers, any return for the years prior to 1892, of said scrip certificates, and that the same were never included in his return or reported for taxation to the board of equalization or the county auditor, so as that the whole controversy grows out of the attempt on the part of the county auditor, together with the county treasurer, to place upon the tax duplicate, under the statutes of this state, the amount of property represented by the certificates and held by the decedent, Younglove, and collect from his estate the amount of taxes together with the penalties thereon, as provided for by the statute of Ohio in such cases. The auditor and treasurer having done all things required by the statute to be done as a condition precedent, for the collection of such taxes.

It will be observed that the question presented for determination is one that involves large interests, not only to the county of Cuyahoga and to the plaintiffs' decedent, but indirectly to all holders during the years referred to, of the scrip certificates, that have not been listed for taxation in this county.

And while it behooves county officers as well as those authorized by statute, known as "tax inquisitors," together with the courts, to exercise the highest degree of diligence and care in getting in taxes or making those who evade the tax laws of the state, and who are, (I am sorry to say), entirely too numerous, yet in so doing, the courts should be careful, as well as the officers referred to, not to permit such diligence to over-step and place the burden of taxation upon property or interests that are not taxable in the hands of individuals, either under the constitution, or the statutes of the state.

I have not had submitted to me during my service upon the bench, a question that requires greater care and closer thought, to work out proper conclusions, than the one under consideration. Neither have I had presented to me more elaborate arguments and briefs, or one showing greater care and industry than the presentation of the issues involved in this action. And I have given to it my best consideration, and have reached conclusions satisfactory to myself, after a careful examination of all the authorities, and the record in the case, which necessarily has involved a great deal of labor.

Article 12, sec. 2, of the constitution of the state of Ohio, provides as follows:

"Laws shall be passed taxing by a uniform rule all monies, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property, according to its true value in money, public school-house, houses used exclusively for public worship, institutions of public charity, public property used exclusively for any public purposes, and personal property to any amount not exceeding in value, two hundred dollars for each individual, may, by general laws be exempt from taxation; but all such laws shall be subject to alteration or repeal; and the value of property so exempted shall from time to time be ascertained and published as may be directed by law."

Under this provision of the organic law of the state, sec. 2731 was enacted, which provides that:

"All property, whether real or personal, in this state, and whether belonging to individuals or corporations, and all monies, credits, investments in bonds, stocks, or otherwise, of persons residing in this state, shall be subject to taxation, except such only as may be expressly exempt therefrom; and such property, monies and credits and investments shall be entered on the list of taxable property as prescribed in this title."

Sec. 2730, is an act defining the meaning of certain terms used in the general provision for taxing property to-wit: it provides:

"The term *personal property* shall be held to mean and include,

"First—Every tangible thing being the subject of ownership whether animate or inanimate, other than money, and not forming part of any parcel of real property as hereinbefore defined.

"Second—The capital stock, undivided profits and all other means, not forming

part of the capital stock of every company, whether incorporated or unincorporated, and every share, portion or interest in such stock, profits or means by whatsoever name the same may be designated, inclusive of every share or portion, right or interest, either legal or equitable."

Also sec. 2746 provides, among other things: " No person shall be required to list for taxation any share or shares of the capital stock of any company, the capital stock of which is taxed in the name of such company."

It is now insisted by the county authorities, that under the provisions of the constitution to which I have referred, together with the statutes referred to, the scrip certificates for the years 1887 to 1892 inclusive, were personal property, and taxable in the hands of the deceased, M. C. Younglove, at the rate provided for by statute; and it is so conceded by counsel for the county; because they say that the scrip certificates are certificates of indebtedness coming within the provision of sec. 2730, which provides among, other things, that certificates of indebtedness shall be taxable, or rather that investments in bonds shall be held to mean and include certificates of indebtedness.

They contend also that the scrip certificates referred to, are not, within the meaning of the statute or charter of the company, stock; and that the certificates are not stock I think is fairly conceded; whether conceded or not, they are clearly *not* stock certificates.

On the other hand, it is contended by counsel for the plaintiffs, that they are scrip certificates certifying to the holder thereof a fixed right to have in the capital stock of the company, upon the happening of a certain event, stock to the full number of shares represented and called for by such scrip certificates; or, in the event legal disabilities exist which prevent the issuing of stock, then the owner and holder of the scrip certificate shall have its par value upon demand and its surrender, in money.

These statements and contentions bring us face to face with the proposition as to what, in law and in fact, is the instrument of writing set forth in the resolution of the company referred to and denominated as "scrip certificate."

In this case as in all others referred to in the authorities cited by counsel on both sides, different names have been given to such instruments or paper writings. However, the term "scrip certificate" has, in law, a definition, and is said to be, by some of the best authors upon this subject, a certificate or schedule—evidence of the right to obtain shares in a public company, called "scrip certificates", to distinguish it from the real title to shares; but I do not believe that any fixed definition or term can be applied to such certificates, and, by the use of such terms or definitions, fix the legal rights and relieve from or impose legal duties and burdens; but I believe a wiser and

safer rule to be: to determine the character of the certificate from the facts of the particular case and the relation that the certificate bears to the object or property against which it is issued and outstanding, as an undertaking of the owner or holder of the property or funds against which such certificate has been issued; for instance, in the case at bar, the resolution of the Cleveland Gas Light and Coke Co. provided that "the earnings and profits of the company, amounting to more than $151,200.00, have from time to time been invested in the extension of the company's works and providing additional facilities for production and distribution made necessary by increased demand for gas, and in that manner large addition has been made to the value of the property of the company by withholding from the stock-holders monies which have been fairly earned and, but for the above mentioned expenditures, would have been paid to them; and whereas, upon a fair and just estimate of the property of the company, it has been in this manner increased in value over the amount of the present capital stock by at least said sum of $151,200.00, it is, therefore, Resolved, etc."

The adoption of this resolutiton gave to the company the right, and the right alone, to issue the certificate, and, in issuing the certificate, the company provided,—bearing in mind now, that the resolution specifically set forth the fact that whilst the company's earnings and profits amounted to $151,200.00, yet the whole of it had been re invested in the enlargement of its plant, and increased its capacity or the value of its property tc that extent—the certificate issued, then provided that "the holder of the certificate, his heirs or assigns,"—mark the language—"will be entitled upon the surrender of this certificate, to shares of ten dollars each of the capital stock of this company, whenever, and so soon as such capital stock shall be increased $151,200.00 or more, above the present amount thereof, and until such increase is made and this certificate surrendered for conversion, dividends upon the earnings of the company or from the proceedes of the sale of its property, whether made in money or in scrip, shall be paid to the owners of this certificate, appearing as such upon the books of the company, *pro rata* with and the same as the owners of the share of the capital stock; provided, however, that if at the time of the increase of the capital stock, there shall exist any legal disability which will prevent the conversion of this certificate into stock, and there shall be paid to the owner thereof, upon demand and its surrender, the par value, in money, of the shares as herein provided for."

So as that it clearly appears to the court, from the facts in this case as set forth in the resolution and the certificate itself, that no monied obligation was assumed or promise made by the corporation to the holder of such certificate but that it would, when the capital stock of the company should be

increased to the amount of $151,200.00, issue to the holders of such certificates, stock certificates in the amount or number of shares called for or represented by the certificates thus presented and surrendered. That is the first and the only obligation or promise created by the resolution or the certificate itself, by the plain language thereof.

Then it provides that if, by reason of legal disabilities, the company is unable to issue capital stock or stock certificates, in that event, and in that event only, will it honor or pay the par value of such scrip certificates in money.

That such legal disability did not arise and did not exist at the time when the company undertook to make good its undertaking, as evidenced by such scrip certificates, is conceded in this case, and that being a conceded fact, it is perfectly clear to the mind of the court, that neither the facts nor the law would authorize the court in concluding for one moment, that any obligation was assumed or promise made by the corporation to do other than to issue some time in the future, a stock certificate representing identically the same interest and the same holding in the property of the company thus increased in value by reason of the application of its earnings and profits in extending its plant and increasing its capital.

If then. the court is right in this conclusion, the relation of the certificate to the $151,200.00, was the evidence of an interest in that much of the earnings of the corporation, which was to be further evidenced by a stock certificate so soon as the capital stock should be increased to that amount and the company authorized to issue stock certificates. As I have said, in this case no promise to pay in property or money ever was made by the corporation.

But it is earnestly contended, as I have said, by counsel for the county, that the scrip certificate was, and is, an investment in bonds or a certificate of indebtedness. I do not think it is maintainable for one moment that it was an investment in bonds, nor was it stock. If it is anything that makes it taxable or falls within the provision of the statutes of Ohio, it is the fact that it does evidence an indebtedness of the company to the holder, making the certificate itself available in his hands as as sets or property.

It is true, that dividends were declared and paid upon these certificates. It is also true, that the certificates were hypothecated in the banks or to individuals as collateral for the loan of large sums of money—hypothecated at their par value the same as stock. The dividends paid upon them were also paid at the same rate as that of the capital stock, but this would not make it a certificate of indebtedness. A certificate of indebtedness in this case would be an instrument certifying that The Cleveland Gas Light and Coke Company was indebted to the holder of the certificate, in a given

amount of money or property to be paid or delivered at some future time.

Was there such a promise made in this certificate, either upon the face of it or by construction?

And that leads us to return again to the proposition and the consideration of the language used in the certificate itself; and, as I have said, that language and undertaking is to do a certain specific thing, to-wit:

Issue capital stock of the company, representing the amount of the increase named in the resolution and evidenced by the certificate, and in the event that that could not be done, then it would be a certificate of indebtedness and made good by the payment of money.

But the facts in this case clearly show, and indeed concede, that the condition precedent to the payment or redeeming of the certificate in money, named, never occurred; but, in fact, on February 14, 1893, the company did redeem and did make good the only obligation or promise made in the scrip certificate, to-wit: issued its capital stock in lieu of the scrip certificates, and redeemed them in the capital stock of the company.

Now, how can it be said or contended that it is a certificate of indebtedness, under the language used and the facts admitted in this case? We are clear in the opinion that to give to the scrip certificates the name of *investment in bonds*, or *certificates of indebtedness*, is a misnomer, wholly unauthorized, in view of the facts, and the relation the certificate sustained to the capital stock or the earnings of the company against which they were issued and outstanding.

Again, it is contended by counsel for the county auditor and treasurer, that only such property as is expressly exempted from the operation of sec. 2731, of the Rev. Stats. of Ohio, can be, or is relieved from taxation. True, the statute so provides; but we must not lose sight of the fact that the statute is describing and referring to *property*. Is, therefore, the scrip certificate in this case "property" in the hands of the holder of the certificate in the sense and meaning of that term, as used by the legislature of Ohio, in providing for the taxing of property in this state? If it is, clearly, then, it would not be exempted expressly by the statute, and though not enumerated by a given name, yet under that provision of the statute which provides that "personal property shall be held to mean and include, First—every tangible thing being the subject of ownership, whether animate or inanimate," but would be taxable. And, in determining this question, we are again compelled to return and look to the instrument itself and the relation it bears to the property it is issued against or supposed to represent. The $151,200.00 in the hands of the corporation was never until 1895, distributed among the share-holders, unless the scrip certificates amounted to such distribution. If they did, then, clearly it

would be property under the definition I have last referred to in the statutes. Hence, if it distributed the accumulation of the company by the issuing of the certificate itself, then the distribution must have been complete, and there would remain nothing to be done after the issuing and delivering of the certificate, and each shareholder would then have his distributive share either delivered to him in person, or left remaining with the corporation subject to his absolute control and order. Is that true in this case? What distribution was ever had of the earnings of the company, as represented by the scrip certificate? When was it delivered? When and by what authority did any one of the share holders or stockholders, to wit: the plaintiffs' decedent in this case, have absolute control over his interest in the $151,200.00?

Now, looking close to the certificate and the resolution, what authority and control did it vest in him over his interest in the earnings of the company, not represented up until 1893, by the certificates of stock? Simply this: that whenever the capital stock of the company should, by authority of law, be increased to the sum of $151,200.00, he should have the right to present his certificate, surrender it, and receive, in lieu thereof, not money, but a certificate in the capital stock of the company.

Did, then, the issuing of the scrip certificate amount to a distribution,—give him any control over or right to direct the dispositon of, save in one particular instance, the right to surrender and take, in lieu thereof, stock certificate as he did in 1893?

Clearly it did not distribute. Clearly it did not amount to property in his possession, but amounted only to a certificate of the fact, that upon the happening of certain events in the future, he, his heirs or assigns, might present the instrument of writing, thus delivered to him, and, in lieu thereof, receive certificates in the capital stock of the company, which all must concede were at no time, neither before nor after the issuing of the certificate, taxable in his hands under the laws of Ohio; and we are forced to the conclusion that the certificate called "scrip certificate" was not property in the hands of the plaintiffs' decedent, and was not, therefore, property in any sense of the term under any statute of the state or the organic law of the state, subject to taxation as property in his hands.

But it is contended that the $151,200.00, or the accumulation of the company up until such time as distribution was had by the issuing of certificates of the capital stock of the company, should not be permitted to evade bearing its burden of the taxes of the state, county and municipality.

There can be but one answer to this question; and that is, that the position is absolutely unassailable. It should bear and must bear its burden of the taxation; and by the issuing of such paper or the adoption of such resolution, the law of taxation can not and should not be evaded, but that is an entirely different proposition as to whether or not it shall be held to be property in the hands of the plaintiffs' decedent, or under the statute be taxed as the property of the corporation.

We think, clearly, that it was and up until 1893, did remain exclusively the property of the corporation, and to permit the county auditor to place the par value of the scrip certificates upon the duplicate of this county, and permit the treasurer to collect taxes thereon, would be a clear violation of the constitution of the state as well as of the statutes of Ohio, inhibiting the double taxation, and a violation of the statute relieving the share-holder in Ohio corporations from paying taxes upon the share he holds and owns in the corporation itself, but that all such property in its possession and belonging to it, shall be returned by the corporation, taxed in its name, and it must bear the burden.

Upon what theory could The Cleveland Gas Light and Coke Company be relieved of returning and paying taxes upon its earnings, or the $151,200.00, from the year 1887 up to 1892? Could it as a corporation, successfully defend against the placing of that amount upon the duplicates of this county for taxation, upon the theory that it had distributed and that the stock-holders and share-holders had left it on deposit with the company with absolute control over and right to dispose of? If so, the first inquiry would be to have it produce the evidence of its distribution and the conveying of the title to such property to its share-holders, and to establish that fact, or its defense, it could do but one thing,—produce the resolution and the certificate itself.

The truth is, in this case, that the whole of the property or monies sought to be taxed, in the hand of the share-holders, because they hold the scrip certificate, has been for all the years named, and was, in fact, up until 1893, the property of the corporation over which it kept absolute dominion and control, and obligated itself to do but one thing, and one alone, if when the time came no legal impediment existed to the performance of that undertaking.

Hence, we think it perfectly clear to now undertake to make or hold that the scrip certificate is *property*, is an *investment in bonds*, or a *certificate of indebtedness* would be to tax mere theory and names, and not substance or property itself.

Ordinarily the capital stock of a company represents the property of the company, but, as has been said, this is not necessarily so. Stock-holders, by waiving dividends, add to the value of the property of the company; in other words, they have permitted the property to accumulate instead of dividing it among themselves; in order to make their interest in this accumulation more valuable, certificates, called "scrip certificates," are issued, showing or representing their interest in the accumulated property. The certificate gives them no new property, subjects to their control no property, but

merely evidences their share or shares in the whole of the accumulated property of the company, over and beyond its capital stock already represented by certificates of stock, and from the time the accumulation started until the scrip certificates, so called, were issued, the original certificate of stock, held by the stockholders covered and represented such accumulation. In other words, the issuing of the certificates added nothing to the liability of the company, and all dividends that were paid upon such scrip certificates would have been paid upon the capital stock if no such certificates had been in existence; and the issuing of the certificates took nothing from the company, in no manner rendered less its assets or ability to meet and discharge its outstanding obligations. If that be true, and confessedly it is true, then, upon what theory either in law or fact, could a shareholder, whether he holds the evidence of his right to share in the accumulated property or not, be taxed? And that which is conclusive to the mind of the court as answering completely all the claim made by counsel in this case for the county officers, if the fact that from the issuing of the first certificates—scrip certificates—up until February, 1893, the corporation retained the whole of the property, and exercised and still does exercise dominion over it, so much so that in 1893 it issued to its stockholders, as against the accumulation of property thus in its hands, certificates of stock representing the whole of the capital stock then in its possession taking up and cancelling the outstanding scrip certificates.

Who would claim that from and after February 14, 1893, the accumulated or remaining capital that had remained in the hands of the corporation for the five preceding years, would be from and after February 14, 1893, taxable in the hands of a stockholder, who from that time forward, held his interest and the evidence of his interest in such accumulation of capital by virtue of a stock certificate? No one. And if this be true, with what force does it come, and how inevitable the conclusion that if it was not taxable from and after February 14, 1893, because it is represented by stock certificates in the hands of the share-holders making it taxable in the name of the company or the corporation, how can it be said that the same property for five years preceding, because the stock had not been issued, but scrip certificates which is mere evidence of its right to participate proportionally in the distribution of stock certificates, in 1893, can be made to bear the burden of taxation in the hands of the share-holders or those holding certificates evidencing alone their right to have, in lieu thereof, stock certificates which were made and issued and delivered to them in 1893.

We think from an examination of all the authorities and briefs submitted, and the entire arguments in the case from beginning to end, that the certificates referred to are not certificates of indebtedness, and not certificates of investments in bonds, are not and never were property in the hands of the share-holders.

Being decidedly of this opinion and thus holding, renders it unnecessary for the court to pass upon the other questions made in the case.

The injunction in this case will be made perpetual.

Exceptions noted by the defendant, and notice of appeal given.

Bond fixed in the sum of five hundred dollars.

Judge Boynton, Squire, Sanders & Dempsey, counsel for plaintiffs.

P. H. Kaiser, Judge J. M. Jones, and R. W. Warwick, counsel for defendant.